UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

:

ALJULAH CUTTS,                                         :

:

Petitioner          :

:

:          19-cv-10721 (LJL)

-v-                          :

:          OPINION AND ORDER

CHRISTOPHER MILLER, Superintendent, Green      :
Meadow Correctional Facility                           :

:

Respondent.         :

:

-------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/25/2021__

LEWIS J. LIMAN, United States District Judge:

Petitioner Aljulah Cutts ("Petitioner" or "Cutts") seeks relief pursuant to 28 U.S.C.

§ 2254 from his conviction and sentence imposed in New York State Supreme Court, New York

County.  On January 20, 2012, Petitioner was convicted in New York State Supreme Court on

charges of murder in the first degree in violation of N.Y. Penal Law § 125.27(1)(a)(vi), murder

in the second degree in violation of N.Y. Penal Law § 125.25(3), and robbery in the first degree

in violation of N.Y. Penal Law § 160.15(1).  The convictions stem from the July 29, 2009 death

by strangulation of Felix Brinkmann in the course of a robbery and burglary in New York.

Petitioner was sentenced to indeterminate prison terms of 25 years to life on the murder counts

and a determinate prison term of 15 years on the robbery count, to be followed by five years of

post-release supervision, with the prison terms to run concurrently.

Petitioner fails to make any showing that would entitle him to Section 2254 relief and

thus his petition for writ of habeas corpus is dismissed.

## FACTUAL BACKGROUND

A. <u>Cutt's Arrest</u>

On July 29, 2009, Felix Brinkmann ("Brinkmann") was murdered in his Manhattan, New York apartment. His building's doorman reported that, shortly after 11:00PM on the day of his murder, a woman and man entered the building and asked to go to Brinkmann's apartment. The woman was later identified as Angela Murray ("Murray"). The doorman described the man with her as about five feet nine inches tall, in his twenties, wearing black jeans, and a black T-shirt. Murray called Brinkmann using her cellphone, and Brinkmann directed the doorman to send the woman up. The doorman let both the man and woman up to the floor where Brinkmann's apartment was located. Later that night, around 11:50PM, the doorman encountered both Murray and the man again. He saw them using a hand truck to move what he mistakenly believed was a television set. Murray and the man then drove off in Brinkmann's automobile.

Detectives, after hearing the doorman's account, obtained Brinkmann's telephone records from his service provider. They learned that a phone registered to Murray had called Brinkmann's phone around 11:15PM that night. Detectives went to Murray's apartment and located a safe that had belonged to Brinkmann. They arrested Murray. Murray's telephone record showed that she had been in communication with a number registered to Aljulah Cutts on the date of Brinkmann's death. Detectives also obtained a Walgreens receipt from her apartment with a date and timestamp from shortly before Brinkmann's death. In the Walgreen's security video footage, detectives saw Murray in the company of a man dressed in black jeans and a black shirt later identified as Cutts. They also reviewed footage of a McDonald's where Brinkmann's credit card had been used after his death. In the video they saw Cutts and a man identified as his brother Hasib Cutts ("Hasib").

On August 5, 2009, detectives received an order from New York Superior Court Judge Kevin McGrath authorizing investigators to obtain cell phone information, including cell site

location information ("CSLI"), for Murray, Cutts, and Hasib.  Access to CSLI can provide information about an individual's physical location and movements, generated from a cell phone's continual connection to nearby cell sites.  The order was issued under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d), and found "probable cause" that location information was "relevant to an ongoing criminal investigation." Dkt. No. 11 at 4.

The next day, on August 6, 2009, detectives used the CSLI to track Cutts' location.  They found Cutts with a woman later identified as Pearl Odamtten ("Odamtten").  The two were carrying food out of a restaurant.  The detectives ordered Cutts to the ground.  Cutts dropped the food, and turning to Odamtten, exclaimed, "The bitch gave me up. You know I was with you, you know I was with you."  Police arrested Cutts and took him to an interview room at the station house.

### B.  Cutts is Interrogated

Detectives Kenneth Staller and Thomas Trezza of the New York Police Department ("NYPD") began questioning Cutts at around 7:30PM on August 6, 2009.  He was advised of his *Miranda* rights, which he waived.  The two detectives questioned Cutts for two to three hours and were then replaced by Detective Mark Worthington ("Worthington").  Cutts admitted to Worthington that he had a role in Brinkmann's death and that he had helped Murray to steal Brinkmann's safe and other property from the apartment.  He made these admissions after Worthington told him that the doorman would be likely to identify him and that there was video surveillance of the lobby and possibly DNA evidence at the crime scene.  In reality, Worthington did not know if such evidence existed.  Cutts signed a statement with these admissions around 4:00AM on August 7, 2009.

Cutts then agreed to be interviewed on videotape by two Assistant District Attorneys ("ADAs").  When the ADAs arrived, Cutts indicated to them that he was cold.  He was provided

a sweatshirt and a cup of coffee.  One of the ADAs advised him of his *Miranda* rights.  Cutts asked her whether he should have an attorney, saying that he had already made a statement without an attorney.  One of the ADAs told him that he would have to decide for himself whether to have an attorney during questioning, and the ADAs left the room.  Worthington remained in the room.  When the ADAs returned, Cutts agreed to speak to them without an attorney present.  The videotaped session lasted for approximately two hours, during which Cutts provided a statement that was largely the same as what he had previously told Worthington.  Cutts then participated in a line-up, in which he was identified by a witness who had seen a man transferring the safe from Brinkmann's car into a van.

C.   Cutts is Convicted at Trial

Petitioner went to trial and was convicted of murder in the first degree, murder in the second degree, and robbery in the first degree.  He was sentenced to indeterminate prison terms of 25 years to life on the murder counts and a determinate prison term of 15 years on the robbery count, to be followed by five years of post-release supervision, with the prison terms to run concurrently.

Murray pleaded guilty to second-degree murder and was sentenced to a prison term of 16 years to life.  Hasib pleaded guilty to first-degree robbery and received a 15-year sentence.

**PROCEDURAL HISTORY**

Petitioner was indicted on August 13, 2009, by a grand jury sitting in New York, on the charge of murder in the first degree, murder in the second degree, robbery in the first degree, burglary in the first degree, robbery in the second degree, and burglary in the second degree. Dkt. No. 10-1 at 2-6.  Murray was indicted as Petitioner's co-defendant on the first-degree murder charge.  *Id.*  Hasib and Murray were indicted on all other counts as his co-defendants.  *Id.*

Petitioner moved to suppress his post-arrest statements and a lineup identification.  That

motion was denied at first orally on November 17, 2011 and subsequently in formal findings of fact and conclusions of law. *Id.* at 8. The suppression court found that Cutts' post-arrest statements were lawfully obtained by law enforcement officials. *Id.* at 54-55. Specifically, the suppression court found that Cutts was read his *Miranda* rights, Cutts knowingly and voluntarily waived his right to the assistance of counsel, and Cutts was questioned with due regard for his *Miranda* rights. *Id.* at 54-57. Although at one point in response to questions from an ADA, Cutts asked for advice about whether he should have a lawyer, the suppression court found that such a question was not an unequivocal request for counsel. *Id.* at 59. The suppression court found that the ADA acted appropriately in responding that Cutts would have to decide for himself whether he wished to have counsel and questioning Cutts only after giving him "ample time to do so" and only after Cutts stated "without equivocation that he was willing to answer questions without an attorney being present." *Id.* The suppression court also found that Cutts did not invoke the right to remain silent, that he was allowed to eat while in custody, was not overly tired, and remained alert throughout the questioning. *Id.* at 60-62.

Cutts' trial commenced on May 10, 2012 and concluded on June 6, 2012. Dkt. No. 10-2 at 72. He was convicted by the jury on the charges of first-degree felony murder, second-degree felony-murder, and first-degree robbery. *Id.* at 104. The trial judge sentenced him on June 20, 2012 to indeterminate prison terms of 25 years to life on the murder counts and a determinate prison term of 15 years on the robbery count, to be followed by five years of post-release supervision, with the prison terms to run concurrently. *Id.*

Petitioner appealed his conviction to the Appellate Division of the New York State Supreme Court, First Department. Dkt. No. 10-1, Ex. C. He claimed: (1) the suppression court incorrectly denied the motion to suppress his statements; (2) the trial court erroneously precluded

him from introducing certain photographs into evidence at trial, and that his trial counsel was ineffective in failing to raise constitutional challenges to the evidence's exclusion; (3) his murder convictions were against the weight of the evidence; (4) the trial court improperly denied his challenge to a prospective juror; and (5) his sentence was excessive.  *Id.*

The Appellate Division affirmed Petitioner's conviction and sentence in a decision rendered on November 24, 2015.  *People v. Cutts*,19 N.Y.S.3d 522 (1st Dep't 2015).  Among other things, the appellate court held that the circumstances of Cutts' interrogation were not coercive when viewed in totality, that the videotape evidence refuted Cutts' claim of being exhausted and showed that he wanted to continue talking even when the prosecutor ended the interview, and that he never unequivocally invoked his right to counsel.  *Id.* at 523.  The appellate court rejected Cutts' claim that the verdict was against the weight of the evidence, finding no basis to disturb the jury's credibility determinations.  *Id.*  The appellate court also held that the suppression court properly exercised its discretion in imposing reasonable limits on Cutts' elicitation of evidence of the violent propensities of his brother because the evidence had little or no probative value, and that any constitutional claim on the matter was unpreserved.  *Id.* at 524.  In the alternative, the appellate court rejected any constitutional claim and the claim of ineffective assistance of counsel on the merits.  *Id.*  Finally, the appellate court held that the trial court properly denied the challenge for cause of a prospective alternate juror because the juror gave numerous unequivocal assurances that she absolutely could be impartial.  *Id*.  The New York Court of Appeals denied leave to appeal on February 22, 2016.  *People v. Cutts*, 51 N.E.3d 569 (N.Y. 2016).

On August 11, 2016, Petitioner moved to vacate his conviction in New York State Supreme Court pursuant to New York Criminal Procedure Law § 440.10.  Dkt. No. 10-2, Ex. H.

He argued that his constitutional right to be free from unreasonable searches and seizures was violated when the government obtained Global Positioning Satellite ("GPS") and CSLI from his wireless service provider without obtaining a judicial warrant based upon probable cause. He additionally claimed that he received ineffective assistance of counsel. On January 11, 2017, Judge Juan M. Merchan of the New York State Supreme Court denied Petitioner's motion. Dkt. No. 10-2 at 104. Judge Merchan held that Petitioner's Fourth Amendment claim was procedurally barred because although sufficient facts appeared on the record to have permitted appellate review, the claim was not raised on appeal. *Id.* at 105. The court also held that "the search warrant . . . authorized the wireless company to provide the police with historical as well as real-time cell site information, thus, making Defendant's claim that counsel was ineffective for not asserting that the police had exceeded the scope of the search warrant meritless." *Id.* The court rejected Petitioner's remaining claims of ineffective assistance "because they either lack a legal basis or the motion does not contain sworn allegations substantiating all the essential facts." *Id.* The Appellate Division, First Department, denied permission to appeal on April 6, 2017, upon a finding that there was no request of law or fact presented which ought to be reviewed. *Id.* at 107.

On July 3, 2018, Cutts filed a motion to renew his previous N.Y. Crim. P. L. § 440.10 motion. *Id.* at 109-14. He based his renewed motion on the Supreme Court's intervening decision in *Carpenter v. United States.*, 138 S.Ct. 2206 (2018), which he claimed supported his argument that the government had violated his constitutional rights by failing to obtain a warrant based upon probable cause prior to accessing his CSLI. Dkt. 10-2 at 109. On November 7, 2018, Judge Merchan denied his motion. *Id.* at 140-42. Judge Merchan held that *Carpenter* did not apply retroactively and that Cutts' claim was procedurally barred under N.Y. Crim. P. L.

§ 440.10.  Judge Merchan held in the alternative that the court order authorizing the wireless company to provide the police with CSLI satisfied *Carpenter* because it was supported by a finding of probable cause.  *Id.* at 142.  On May 21, 2019, the Appellate Division entered an order denying permission to appeal, finding that there was no question of law or fact which ought to be reviewed.  *Id.* at 144.  On October 15, 2019, the United States Supreme Court denied Cutts' petition for a writ of certiorari.  *Id.* at 146.

## DISCUSSION

### A.  General Standards

A remedy under Section 2254 is available to a person held "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  To determine whether Petitioner is entitled to a writ of *habeas corpus*, the Court applies the standard of review set forth in Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Section 2254(d) provides, in relevant part, that a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established Federal law" is law "dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final."  *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (quoting *Willliams v. Taylor*, 529 U.S. 362, 381 (2000)).  It "includes only holdings of Supreme Court decisions and does not include dicta."  *Yung v. Walker*, 341 F.3d 104, 110 (2d

Cir. 2002).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court" and arrives at a different result. *Williams,* 529 U.S. at 405.  A decision "involves an 'unreasonable application' of clearly established federal law as determined by the Supreme Court when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (quoting *Williams*, 529 U.S. at 413).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  The petitioner must identify some "increment of incorrectness beyond error" in order to obtain relief.  *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007).  Under either prong of Section 2254(d), "a determination of a factual issue made by a State court shall be presumed to be correct" unless a petitioner rebuts the presumption "of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Downs v. Lope*, 657 F.3d 97, 101 (2d Cir. 2011).  Procedural default constitutes an adequate and independent state-law ground if "the last state court rendering a judgment in the case . . . 'clearly and expressly' state[d] that its judgment

rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).  A state court finding that the applicant's claim is procedurally barred constitutes an adequate and independent basis "if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Moreover, the finding of procedural default must have "a 'fair or substantial basis' in state law." *Id.* at 78 (quoting *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989)).  A determination that a state procedural bar applies is "independent" even if the state court speaks to the merits of the federal issue in an alternative holding. *Id.* at 77.

A state court's "adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris*, 489 U.S. at 262 (internal citations and quotations omitted).  To show cause, the petitioner must demonstrate that an external factor "impeded counsel's efforts' to raise the claim in state court." *Murray*, 477 U.S. at 488.  In other words, cause is not supplied by the ignorance or inadvertence of the defense attorney unless such failings result in constitutionally ineffective assistance of counsel. *Id.*  Prejudice requires a "reasonable probability" that the outcome of the trial would have been different but for the alleged constitutional violation. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).  To show a miscarriage of justice, the petitioner must show that the state court likely convicted an actually innocent person—a finding that is reserved for "extraordinary case[s]." *Murray*, 477 U.S. at 496.

B.  Petitioner's Claim That His Cell Site Location Information Was Collected in Violation of the Fourth Amendment

Petitioner claims that his CSLI was collected in violation of the Fourth Amendment. One week after Brinkmann was murdered, the government obtained an order from a state court judge under the SCA in order to track Petitioner's cellular device.  Dkt. No. 10-2 at 97-100.  The order directed Petitioner's cellular service carrier to provide law enforcement with Petitioner's CSLI from the date of Brinkmann's death on July 29, 2009 through the date of the order.  *Id.* at 99.  It also directed the carrier to provide real-time CSLI for a 60-day period following the order. *Id.* at 97.  The order indicated that the judge had found "probable cause" that Petitioner's CSLI was "relevant to an ongoing criminal investigation."  *Id.* at 97.  The day after obtaining the order, the police used Petitioner's real-time CSLI to find and apprehend him.  *Id.* at 13-14.  Petitioner claims that law enforcement's acquisition of his CSLI without a warrant based upon probable cause violated his Fourth Amendment rights to be free from unreasonable searches and seizures. Dkt. No. 1 at 6.  In essence, he alleges that he is held in custody in violation of the Constitution because his arrest and subsequent statements followed the acquisition of CSLI in violation of the Fourth Amendment.

Petitioner's Fourth Amendment arguments do not provide a basis for Section 2254 relief under the rule of *Stone v. Powell,* 428 U.S. 465 (1976).  In *Stone v. Powell*, the Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial."  428 U.S. at 495; *see also id.* at 481-82.

In this Circuit, "review of Fourth Amendment claims in habeas petitions [may] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at

all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). "[I]f 'the state by enacting a statutory mechanism for the suppression of evidence obtained by unlawful search and seizure, has provided an opportunity fully and fairly to litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review.'" *Cepeda v. Morton*, 2020 WL 6382052, at *4 (S.D.N.Y. Oct. 30, 2020) (quoting *Shaw v. Scully*, 654 F. Supp. 859, 863 (S.D.N.Y. 1987)).

Neither circumstance is present here. New York has provided corrective procedures to redress Fourth Amendment violations. "[T]he 'federal courts have approved New York's procedure for Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law 710.10 *et seq.* as being facially adequate." *Capellan*, 975 F.2d at 70 n.1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)); *see Elliot v. Kirkpatrick*, 2020 WL 6690650, at *5 (S.D.N.Y. Nov. 13, 2020) ("New York's procedure for litigating Fourth Amendment claims is facially adequate.") (internal quotation marks and citations omitted); *Cepeda*, 2020 WL 6382052, at *4 ("New York 'provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial' through a suppression hearing under N.Y. Crim. Proc. Law 710.30.") (citations omitted).

Moreover, Petitioner has not shown, and cannot show, an unconscionable breakdown in the underlying process. "[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. An unconscionable breakdown in the underlying process occurs when "the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law." *Id.* at

12

70.  "Examples of unconscionable breakdowns in the underlying procedure include, but are not limited to, 'the bribing of a trial judge, the government's knowing use of perjured testimony, or the use of torture to extract a guilty plea, all without opportunity to obtain state review.'" *Cepeda*, 2020 WL 6382052, at *5 (quoting *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (per curiam)).

The state courts were available for any Fourth Amendment suppression motions that Petitioner or his co-defendants chose to make.  Although Petitioner moved to suppress the line-up and his post-arrest statements, he did not make any challenge to the acquisition of his CSLI.  The facts that the suppression court and the judge hearing Petitioner's N.Y. Crim. P. L. § 440.10 motion did not have the benefit of the not-yet-decided *Carpenter* case and that the court hearing Petitioner's motion to renew determined that it could not apply *Carpenter* retroactively do not reflect a breakdown in the underlying process, as Petitioner argues.  Those facts reflect the ordinary functioning of the judicial process pursuant to which new legal rules or new applications of existing rules are generated in response to new cases and are applied generally on direct review but not generally on collateral review.  *See Teague v, Lane*, 489 U.S. 288 (1989).

The Court need not reach the government's remaining arguments that there is no Fourth Amendment violation.

C.  Petitioner's Sixth Amendment Claim of Ineffective Assistance of Counsel Based on the Failure to Raise a Timely Fourth Amendment Challenge

The New York State Supreme Court first found, in a January 11, 2017 opinion by Judge Merchan, that Cutts' claims of ineffective assistance of counsel were meritless because his CSLI was obtained on the basis of an order finding probable cause.  Dkt. No. 10-2 at 104-05.  Judge Merchan found that Cutts' remaining claims of ineffectiveness lacked either a basis in law or the necessary sworn allegations substantiating all of the essential facts.  *Id.*  In July 2018, when

Petitioner filed a motion for leave to renew his N.Y. Crim. P. L. § 440.10 motion, including the ineffective assistance claim, Judge Merchan held that his motion was procedurally barred under N.Y. Crim. P. L.§ 440.10(3)(b).  *Id.* at 140-42.  Under that provision, absent a retroactive effective change in the law, a New York state court may deny a motion to vacate a judgment when the grounds raised in the motion were previously determined on the merits.

 To prevail on a claim of ineffective assistance of counsel, Cutts first must overcome the strong presumption that his representation met an objective standard of reasonableness.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  In the process, he must show that his counsel "made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Second, he must show that, but for his counsel's deficiencies, there was a reasonable probability of a different outcome.  *Id.* at 694.  The probability of a different outcome must be "sufficient to undermine confidence in the outcome," and not "substantial, not just conceivable."  *Id.* at 693-94.  Should Petitioner fail to meet either prong of this *Strickland* test, he cannot make out a claim of ineffective assistance of counsel. While the standard for showing ineffective assistance of counsel is already stringent on direct appeal, it becomes even more demanding on federal habeas review.  "The standards created by *Strickland* and § 2254 are both highly deferential, and when the two apply in tandem, review is doubly so."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citations omitted).  Thus, review of ineffective claims under the AEDPA is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

 Petitioner claims his counsel was ineffective for failing to raise a timely Fourth Amendment challenge to law enforcement acquisition of Petitioner's CSLI under the SCA. Counsel, representing Cutts at a 2012 trial, was not ineffective for failing to anticipate the

Supreme Court's 2018 decision in *Carpenter. See, e.g., United States. v. Carrano,* 340 F. Supp. 3d 388, 398 (S.D.N.Y. 2018) ("[A]ttorneys are not required to predict changes in the law."). The Supreme Court's decision in *Carpenter,* which required that the government have a warrant supported by probable cause in order to obtain CSLI, was not a foregone conclusion. In its decision, the Supreme Court identified the issue before it as arising at the intersection of two competing strands of precedent, neither of which compelled its decision. On the one hand, was a person's expectation of privacy in her physical location and movements. *Carpenter,* 138 S.Ct. at 2214-16 (citing *United States v. Jones,* 565 U.S. 400 (2012) (holding that GPS tracking of an individual's vehicle constituted a search within the meaning of the Fourth Amendment)). On the other, was the lack of expectation of privacy in information voluntarily turned over to third parties. *Id.* (citing *United States v. Miller,* 425 U.S. 435 (1976) (no expectation of privacy in information voluntarily provided to banks) and *Smith v. Maryland.,* 442 U.S. 735 (1979) (no expectation of privacy in records of dialed telephone numbers)). CSLI data, the Supreme Court found, did "not fit neatly under existing precedent." *Carpenter,* 138 S.Ct. at 2214. Moreover, prior to the Supreme Court's decision, the weight of authority was against requiring a warrant supported by probable cause to obtain CSLI data,[1] and even the Supreme Court itself reached its decision only by a sharply divided (5-4) majority.

---

[1] *See United States v. Graham,* 824 F.3d 421 (4th Cir. 2016) (finding government acquisition of CSLI data without a warrant supported by probable cause permissible under the Fourth Amendment); *In re Application of U.S. for Historical Cell Site Data,* 724 F.3d 600 (5th Cir. 2013) (same); *United States v. Carpenter,* 819 F.3d 880 (6th Cir. 2016) (same); *United States v. Davis,* 785 F.3d 498 (11th Cir. 2015) (en banc) (same); *see also In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. To Disclose Records to the Gov't,* 620 F.3d 304, 317-18 (3d Cir. 2010) (finding that cell users are likely to be unaware that their location information is being collected, so they cannot voluntarily share it "in any meaningful way," but holding that the government need not establish probable cause to obtain CSLI).

In the light of the authority available to him at the time, Cutts' counsel was not objectively unreasonable in deciding not to make a motion based on the acquisition of Cutts' CSLI data that was obtained pursuant to an order finding probable cause.  *See, e.g., Carrano,* 340 F. Supp. 3d at 397-98 (rejecting defendant's *Strickland* argument that his counsel should have preemptively moved to suppress CSLI before *Carpenter* was issued); *see also United States v. Chambers*, 751 F. App'x 44, 47 (2d Cir. 2018) (finding it reasonable for parties to believe, pre-*Carpenter,* that compliance with the SCA was constitutionally sufficient to obtain cell-site information from a third party, even in the absence of probable cause).  Petitioner cites *In re Application of U.S. for an Order Authorizing Use of a Pen Register with Caller Identification Device Cell Site Location Auth. on a Cellular Tel.*, 2009 WL 159187 (S.D.N.Y. Jan. 13, 2009), which he suggests should have enabled his counsel to realize that the state's collection of real-time CSLI data was impermissible.  This authority, however, existed alongside opinions conversely concluding that an order under the SCA sufficed to obtain CSLI.  *See, e.g., In re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone*, 460 F. Supp. 2d 448, 461-62 (S.D.N.Y. 2006); *In re Application of the United States of America for an Order for Disclosure of Telecommunications Records and Authorizing the Use of a Pen Register and Trap and Trace*, 405 F. Supp. 2d 435, 449-50 (S.D.N.Y. 2005).  Given the dubious bearing of the CSLI data on Cutts' guilt and the mixed authority on the requisite showing to obtain CSLI data, Cutts' counsel was not remiss in making the apparently strategic decision not to challenge the acquisition of that data on Fourth Amendment grounds.  The state's determination that Cutts' counsel's performance was not constitutionally deficient was thus not unreasonable.  Even if Petitioner were able to show that counsel's actions were unreasonable, he would not be able to demonstrate that there was a

reasonable probability of a different outcome.  The Second Circuit has held that suppression is

not required when law enforcement collects CSLI in good faith reliance on the then-existing

legal regime.  *See United States v. Herron,* 762 F. App'x 25, 31 (2d Cir. 2019); *Chambers*, 751

F. App'x at 46-48; *United States v. Zodhiates,* 901 F.3d 137, 143-44 (2d Cir. 2018).  Moreover,

the significant amount of unrelated inculpatory evidence against Cutts renders a different verdict

implausible even absent the CSLI.

D.  Petitioner's Claim That His Videotaped Statement Was Obtained in Violation of His
Fifth And Sixth Amendment Rights

Petitioner claims that his rights under the Fifth and Sixth Amendments were violated

during his interrogation.  Dkt. No. 1 at 9.  Specifically, he alleges that law enforcement took a

videotaped statement from him after he had invoked his right to counsel and while he was too

"exhausted," "lethargic," and "confused" to make a voluntary statement.  *Id.*

Under Supreme Court precedent, if a suspect expresses a desire to have counsel present,

he may not be further questioned until counsel has been made available to him unless the suspect

himself reinitiates communication.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  To

invoke such a requirement, however, the suspect "must unambiguously request counsel."  *Davis*

*v. United States*, 512 U.S. 452, 459 (1994).  "If a suspect makes a reference to an attorney that is

ambiguous or equivocal in that a reasonable officer in light of the circumstances would have

understood only that the suspect *might* be invoking the right to counsel," officers are not required

to cease questioning the suspect.  *Id.*; *see also Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

The state court reasonably applied these precedents.  It found that the Petitioner did not make an

unequivocal request for counsel.  It further found the ADA had acted appropriately in

"reexplain[ing] that [Cutts] had a right to an attorney and [giving] him time to consider whether

he wanted one."  Dkt. No. 10-2 at 3.  The state court's findings are entitled to a presumption of

correctness, and Petitioner has not identified any facts that would call those findings into question, much less provided "clear and convincing evidence" to the contrary.  28 U.S.C. § 2254(e)(1).  Accordingly, Petitioner is not entitled to federal habeas relief on these claims.

Petitioner's related claim that he was too exhausted and confused to make a voluntary statement is equally baseless on habeas review.  Any use of a defendant's involuntary statements at trial is a violation of his due process rights.  *Mincey v. Arizona*, 437 U.S. 385, 398 (1978).  If a suspect is so physically debilitated that he cannot "exercise [] a rational intellect and a free will," his statements are not voluntary and cannot be used against him.  *Id.*  The Appellate Division found that the suppression hearing evidence, conducted in response to Cutts' pre-trial motion to suppress the videotaped statement, established the voluntariness of his statements beyond a reasonable doubt.  The state court concluded that the "circumstances of the interrogation, when viewed in totality were not coercive."  Dkt. No. 10-2 at 2-3.  In federal "habeas proceedings, 'the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for *independent federal determination*.'"  *Jean v. Greene*, 2011 WL 6376718, at *5 (S.D.N.Y. Dec. 14, 2011) (quoting *Miller v. Fenton*, 474 U.S. 104, 106 (1985)).  However, a state court's determinations of "subsidiary factual questions" including "the length and circumstances of the interrogation" are entitled to the presumption of correctness provided by AEDPA.  *Miller,* 474 U.S. at 111.  This Court concludes that the totality of the circumstances established by the record supports the conclusion that the Petitioner made his statements after voluntarily, knowingly, and intelligently waiving his *Miranda* rights.

E.  Petitioner's Claim That the Trial Court's Evidentiary Rulings Deprived Him of His Rights to Present a Defense and a Fair Trial

At trial, Petitioner sought to introduce evidence that he claimed would support his

argument that (1) Hasib was the more culpable participant, and (2) Petitioner had chosen to incriminate himself due to his fear of Hasib.  Specifically, Petitioner wanted to introduce photographs taken from inside Hasib's van of "dead chickens and a crow that was nailed to the van floor."  Dkt. No. 1 at 10.  In attempting to introduce the evidence at trial, Cutts based his argument on state evidentiary claims; he did not argue that he had a federal constitutional right to introduce the photographs.  The trial court did not permit Petitioner to introduce the photographs.  The Appellate Division found that the court had "properly exercised its discretion in imposing reasonable limits on defendant's elicitation of evidence" given that the evidence had "little or no probative value regarding issues actually raised at trial."  *Cutts*, 19 N.Y.S.3d at 523.  To the extent that Cutts was raising on appeal a constitutional claim related to the photographs' exclusion, the state court held that Cutts' claim was unpreserved and declined to review it.  *Id.*  In order to have preserved a constitutional claim for federal habeas review, Cutts must have first followed state procedures for raising the claim.  *See Wainwright v. Sykes,* 433 U.S. 72 (1977) (holding that petitioner's failure to make a timely objection under a state's contemporaneous objection rule bars federal habeas corpus review).  Having failed to do so, Cutts is not entitled to federal habeas review on this claim.  The state court, in the alternative, rejected Cutts' constitutional claim on the merits.  *Cutts*, 19 N.Y.S.3d at 523.  When a state court reaches a petitioner's claim on the merits as an alternative holding, the decision still rests on independent and adequate state grounds.  *Harris,* 489 U.S. at 264 n.10.  Cutts thus cannot pursue his federal constitutional claim here unless he can show prejudice and cause or manifest injustice.

Cutts makes no satisfactory showing of prejudice or cause.  Under the circumstances, it was not ineffective assistance for his counsel to fail to raise his evidentiary objection as a federal constitutional claim.  States have "broad latitude under the Constitution to establish rules

excluding evidence from criminal trials." *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). "Only rarely" is the right to present a complete defense "violated by the exclusion of defense evidence under a state rule of evidence." *Nev. v. Jackson*, 569 U.S. 505, 509 (2013).  Given these stringent standards, counsel is not required to frame its evidentiary appeals on federal constitutional grounds in order to provide effective assistance of counsel.  There also is no "reasonable probability" that the outcome of the trial would have been different but for the alleged constitutional violation.  *Greene*, 527 U.S. at 289.  The evidence against Cutts was extensive.  Cutts made videotaped and written admissions of his involvement in Brinkmann's death and robbery.  His admissions were supported by corroborating evidence including video footage from Walgreens placing Cutts near Brinkmann's apartment around the time of Brinkmann's death.  Moreover, the footage showed Cutts with Murray and wearing clothing that matched the doorman's description of the man who had gone to Brinkmann's apartment with Murray.

For the same reasons, related to the force of the evidence against Cutts, he cannot show a fundamental miscarriage of justice that would overcome his procedural default on this or any of his other claims.  He has not shown that the alleged constitutional violation probably resulted in the conviction of "one who is actually innocent."  *Murray,* 477 U.S. at 496.

Even if the Court were able to review Cutts' claims, it would grant him no relief as his claims are without merit.  Federal courts have a limited role to play in habeas review in assessing the merit of state evidentiary rulings and may grant a petitioner relief only when he can show that the erroneous rulings were of a constitutional magnitude.  *See McCray v. Artuz*, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994).  As issues regarding the admissibility of evidence in state court concern primarily matters of state law, they do not violate the United States

Constitution unless they create fundamental unfairness.  *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial.") (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *see also Ip v. Henderson*, 710 F. Supp. 915, 919 (S.D.N.Y.), *aff'd*, 888 F.2d 1376 (2d Cir. 1989).  Petitioner's claim that the evidence should have been admitted would not rise to a constitutional level.  The exclusion of these photos, which were of dubious probative value, does not call into question the fundamental fairness of Cutts' conviction.

F.  Petitioner's Claim That The Trial Court's Denial of a For-Cause Challenge Denied Him a Fair Trial

Petitioner challenges the trial court's decision not to excuse for cause prospective juror Julie Ford ("Ford").  Dkt. No. 1 at 11-12.  Ford's husband was a former prosecutor in the Kings County District Attorney's Office.  *Id.*  The court rejected the cause challenge against Ford because she stated that she could be fair and impartial.  *Id.*  Petitioner then challenged Ford peremptorily and she was dismissed.  On appeal, the court held that the trial court properly denied the challenge for cause of a prospective alternate juror because the juror gave numerous unequivocal assurances that she absolutely could be impartial.

Petitioner claims that he was deprived of his Fifth Amendment right to an impartial jury and his Fifth and Fourteenth Amendment rights to a fair trial when the court refused to allow his counsel to strike Ford for cause.  He bases his claim on Ford's statements during colloquy including that: (1) she believed her husband that the defendants he prosecuted were guilty because she believed that prosecutors do not prosecute a case unless they truly believe the defendant to be guilty and (2) she would hope that a detective or police officer would be a reliable witness.  Dkt. No. 1 at 11.  Petitioner admitted that "the juror ultimately stated that she

can be fair and impartial," Dkt No. 18 at 32, but alleges that "her body language clearly said the opposite," *id.*  As a result of the court's refusal to strike Ford for cause, the three remaining alternate jurors were seated without the Petitioner being able to *voir dire* them or exercise peremptory challenges against them.  *Id.*

Petitioner's arguments have been rejected by the Supreme Court.  "[U]nlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."  *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000).  Thus, "the loss of a peremptory challenge [does not] constitute[e] a violation of the constitutional right to an impartial jury. . . . So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988).  The loss of a peremptory challenge by its exercise to remove a juror who should have been excused for cause also does not violate the Fourteenth Amendment.  "[A] defendant's exercise of peremptory challenges . . . is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause."  *Martinez-Salazar*, 528 U.S. at 317.  "If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern."  *Rivera v. Illinois.*, 556 U.S. 148, 157 (2009).

Cutts claims that Ford should have been dismissed under the standards for "cause" removals under state law.  The Appellate Division rejected Cutts' argument that the trial court violated state law, *Cutts*, 19 N.Y.S.3d at 545-46, and, in any event, "errors of state law do not automatically become violations of due process."  *Id.* at 160.  The juror whom the Petitioner claims was biased was excused and did not sit on the Petitioner's jury.  Petitioner did not allege

then and does not allege now that the resulting jury was not impartial.  Accordingly, he has no Sixth or Fourteenth Amendment claim.  *See Rivera*, 556 U.S. at 162; *Brown v. Conway*, 483 F. App'x 593, 594 (2d Cir. 2012) ("Brown's claim does not implicate a federal constitutional right because he has made no assertion that the trial court's alleged error resulted in the empaneling of a juror who was in fact biased against him."); *see also Marshall v. Perez*, 2020 WL 4350047, at *3 (E.D.N.Y. July 29, 2020).

## CONCLUSION

The petition for a writ of habeas pursuant to 28 U.S.C. § 2254 is DISMISSED.  As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2).  In addition, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).


SO ORDERED.


Dated: January 25, 2021
        New York, New York                                 _____
                                                            LEWIS J. LIMAN
                                                            United States District Judge

23